UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JACLYN COHEN,

          Plaintiff,

vs.

UNITEDHEALTHCARE,

          Defendant.

**COMPLAINT**

Civil Action No. _____

---

    Plaintiff, JACLYN COHEN, by and through its attorneys, HURWITZ & FINE, P.C., as and for her Complaint herein, alleges, upon information and belief, as follows:

    1.  At all times hereinafter mentioned, Plaintiff, JACLYN COHEN ("Plaintiff"), was and is a resident of Erie County in the State of New York.

    2.  Upon information and belief, now and at all times hereinafter mentioned, Defendant, UNITEDHEALTHCARE ("UHC"), was and is a foreign health insurance company authorized to issue health insurance plans in New York State.

    3.  This action is for the recovery of amounts owed to Plaintiff following the delivery of her baby at Oishei Children's Hospital ("Oishei"), under a UHC Choice Plus-HSA Plan (Plan No. 80840) (the "Plan"). UHC represented to Plaintiff that Oishei was an in-network hospital, Plaintiff relied upon such representation, and was subsequently denied benefits under the Plan despite such representations. Such representations made to Plaintiff and others constitute deceptive trade practices. UHC's continued refusal to provide coverage on account of an internal policy after admitting its misrepresentation constitutes bad faith, in gross disregard of the interests of its plan members including Plaintiff.

    4.  Plaintiff seeks recovery of benefits owed under the Plan, as well as

1

extracontractual and/or punitive damages and damages associated with UHC's fraudulent and deceptive trade practices that harm not only Plaintiff, but the public at large.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter under 28 USC § 1332 in that it arises between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, insofar as the value of the right being protected and/or the injury being averred exceeds $75,000.

6. Venue is proper in this district under 28 USC § 1391(a)(2) and (b)(2) as a substantial part of the events that is the subject of this action is situated herein.

7. Specifically, this action seeks damages from UHC associated with Plaintiff's delivery of a child at Oishei in Buffalo, New York.

## THE UNDERLYING INCIDENT AND ACTION

8. Plaintiff is employed by American Express.

9. American Express provides its employees with employment benefits, including health insurance under the Plan.

10. Plaintiff is a member of the Plan.

11. The Plan is offered and/or administered by UHC.

12. In conjunction with the Plan, Plaintiff pursued additional benefits through participation in a program called "Healthy Babies Maternity Program", offered by American Express in partnership with UHC ("Healthy Babies").[1]

13. As part of Healthy Babies, UHC assigns personal obstetrics nurses to participating members of the Plan.

14. The personal obstetrics nurse assigned by UHC to a participating member

---

[1] The program is described on the American Express website:  https://www.healthybabiesmsac.com/t-faq.aspx

of the Plan is an employee, agent and/or representative of UHC.

15. As part of Healthy Babies, personal obstetrics nurses assigned to participating members of the Plan provide consultation and support throughout pregnancy and after delivery.

16. As part of Healthy Babies, UHC directs participating members of the Plan to contact their assigned personal obstetrics nurses at 877-201-5328.[2]

17. As part of Healthy Babies, UHC provides personal obstetrics nurses with access to Plan information for reference during consultations with participating Plan members.

18. As part of Healthy Babies, UHC provides personal obstetrics nurses with access to Plan information through a system known as "Rally," for reference during consultations with participating Plan members.

19. As part of Healthy Babies, UHC assigned Plaintiff a personal obstetrics nurse.

20. As part of Healthy Babies, Plaintiff was advised that the nurse was available to answer any questions relating to her pregnancy and delivery.

21. As part of Healthy Babies, the personal obstetrics nurse assigned to Plaintiff was named "Sandra," who was available by telephone at 877-201-5328, ext. 62234.

22. As part of Healthy Babies, Plaintiff asked Sandra to identify an "in-network" hospital for the delivery of her baby.

23. As part of Healthy Babies, Sandra advised that Oishei Children's Hospital ("Oishei"), part of Kaleida Health Care, was confirmed as an "in-network" hospital.

---

[2] Similar to the Healthy Babies Maternity Program offered to employees of American Express, UHC partners with various other employers to offer similar programs, directing those participating employees to contact the same 877-201-5328 telephone number. Several examples from other employer benefit websites have been attached hereto as **Exhibit A**. Those print screens also, additionally provide the following UHC weblink with the same telephone number: myuhc.phs.com/maternitysupport

24. Specifically, as part of Healthy Babies, Sandra confirmed that Oishei was an "in-network" hospital in consultation with information provided by UHC through the "Rally" system, or otherwise.

25. Justifiably, in reliance upon information provided by UHC, its employee, agent and/or representative, Plaintiff delivered her baby at Oishei on March 20, 2021.

26. Justifiably, in reliance upon information provided by UHC, its employee, agent and/or representative, Plaintiff forewent any opportunity to deliver her baby at another hospital on March 20, 2021.

27. Shortly after the birth of her child, Plaintiff received a bill from Kaleida Health Care for $22,323.72 (Kaleida Account No. 33629232) (the "bill").

28. Thereafter, Plaintiff contacted UHC, at which point she was told, for the first time, that Oishei was outside of the network.

29. Despite misrepresentation by UHC, its employee, agent, and/or representative, UHC refused to provide coverage to Plaintiff for the delivery of her child.

30. Clearly, had Plaintiff been advised that Oishei was outside of the network prior to the delivery, Plaintiff would have given birth at an "in-network hospital."

31. On July 7, 2021, Plaintiff contacted Sandra via telephone.

32. Sandra advised Plaintiff that she remembered their earlier conversation and remembered telling Plaintiff that Oishei was an in-network hospital.

33. Thereafter, Plaintiff and Sandra together spoke to a customer service representative from UHC, "Kimberly," on the telephone.

34. While Plaintiff and Sandra were on the telephone with Kimberly, Sandra advised Kimberly that the "Rally" system used to confirm that Oishei was an in-network facility still identified Oishei as an in-network facility.

35. Kimberly, as an employee, agent, and/or representative of UHC, advised that she would reprocess Plaintiff's bill as an in-network facility pursuant to a "benefits exception," and that a new and adjusted bill would be mailed shortly.

36. To date, no adjusted bill has been received by Plaintiff.

37. Instead, Plaintiff's bill was placed with non-party Revco Solutions, for debt collection purposes.

38. On October 22, 2021, Plaintiff again contacted UHC via telephone and spoke to "Cynthia," an employee, agent and/or representative of UHC.

39. Cynthia advised that she would "look into it" and would contact Plaintiff via telephone to discuss further.

40. Plaintiff missed a telephone call from UHC on October 25, 2021, which she promptly returned and left a voicemail that went unreturned.

41. Plaintiff missed another telephone call from UHC on October 26, 2021, which she promptly returned and left a voicemail that went unreturned.

42. On October 29, 2021, Plaintiff again contacted UHC on the telephone and was advised by the UHC employee, agent and/or representative that she "did not know why the benefit exception was never processed" and that UHC would reprocess the bill as a benefit exception.

43. On November 9, 2021, without receipt of a new bill, Plaintiff again contacted UHC by telephone, this time speaking to Brandon (a UHC supervisor – 779-200-6025) who advised that he had been assigned for further handling of her claim.

44. On November 11, 2021, after a series of telephone calls and voicemails, Brandon indicated that UHC was "still working on it".

45. Four subsequent calls to UHC on November 18, 2021, November 29,

2021, December 7, 2021, and December 13, 2021, left the matter unresolved.

46. During the November 29, 2021 telephone call, Brandon advised that he would review the July 7, 2021, telephone call between Plaintiff, Sandra, and Kimberly, to verify that Sandra confirmed Oishei was in-network.

47. Finally, on December 20, 2021, Plaintiff received a telephone call from Brandon, acting on behalf of UHC, indicating that UHC would not process the bill as a "benefit exception," since Sandra's manager (not Sandra herself) indicated it was UHC Policy not to advise patients on "where to go" (the "Silence Policy").

48. UHC's declination of a "benefit exception" was made with full knowledge that Plaintiff was incorrectly advised by Sandra, as an employee, agent and/or representative of UHC, on multiple occasions, that Oishei was in-network.

49. UHC's declination has wrongfully and unjustly jeopardized Plaintiff's financial stability and credit in blind reliance upon the internal Silence Policy on a matter of utmost importance to pregnant members relying upon its services—which hospitals are "in-network".

50. UHC's conduct is part of a pattern or practice that will likely harm other members of healthcare plans at large including, but not limited to, providing inaccurate information to members regarding important in-network services such as which hospitals are covered for delivery, agreeing to provide benefit exceptions to members of UHC issued health insurance plans only to later refuse to provide benefit exceptions despite UHC's active provision of misinformation regarding health insurance plans, and ignoring UHC's actual provision of misinformation in blind reliance upon an internal policy that is not followed.

51. UHC's conduct is direct opposition to New York State public policy requiring full, accurate, and complete health insurance information be provided to insureds,

6

which is detrimental to all insureds and New York State.

## AS AND FOR PLAINTIFF'S
## FIRST CAUSE OF ACTION

52. Plaintiff reasserts and realleges each and every allegation contained within the paragraphs above as if fully set forth herein.

53. Plaintiff is a member of the Plan issued by UHC.

54. The Plan requires UHC contractually to provide coverage to Plaintiff for certain specified medical expenses, including delivery of children.

55. Plaintiff delivered her child and sought coverage from UHC for expenses associated with that delivery.

56. Despite its obligations under the Plan, UHC has failed and/or refused to honor its coverage obligations to Plaintiff.

57. UHC is in breach of its contract with Plaintiff.

58. Plaintiff is entitled to relief from UHC in the form of payment of those medical expenses incurred during the delivery of her child, which includes $22,323.72 in principal balance, plus interest thereon at New York's statutory rate of 9%.

## AS AND FOR PLAINTIFF'S
## SECOND CAUSE OF ACTION

59. Plaintiff reasserts and realleges each and every allegation contained within the paragraphs above as if fully set forth herein.

60. Plaintiff is a member of the Plan issued by UHC.

61. Pursuant to the Plan, Plaintiff is and was entitled to coverage for medical expenses associated with the delivery of her child.

62. Prior to delivery of her child, Plaintiff proactively sought confirmation from UHC or its employee, agent, and/or representative that Oishei is an in-network facility.

63. UHC or its employee, agent, and/or representative fully understood that Plaintiff intended to deliver her child at one of several in-network hospitals.

64. Prior to delivery of her child, UHC, its employee(s), agent(s), and/or representative(s) represented to Plaintiff that Oishei is an in-network facility.

65. In other words, prior to delivery of her child, UHC, its employee(s), agent(s), and/or representative(s) promised that Plaintiff would be provided full coverage of medical expenses if she delivered her child at Oishei.

66. It was foreseeable that Plaintiff would reasonably rely upon the representations of UHC, its employees, agents, and/or representatives, that Plaintiff would be provided full coverage of medical expenses if she delivered her child at Oishei.

67. In reliance upon the representations made by UHC, its employee(s), agent(s), and/or representative(s), Plaintiff planned on delivering her child at Oishei prior to delivery.

68. In reliance upon the representations made by UHC, its employee(s), agent(s), and/or representative(s), Plaintiff actually delivered her child at Oishei.

69. Prior to and during delivery of her child, Plaintiff was reasonable in relying upon the representations of UHC, its employee(s), agent(s), and/or representative(s) that Plaintiff would be provided full coverage of medical expenses by delivering her child at Oishei.

70. After delivery of her child, UHC, its employee(s), agent(s), and/or representative(s) notified Plaintiff for the first time that Oishei was an out-of-network hospital.

71. After delivery of her child, UHC, its employee(s), agent(s), and/or representative(s) advised Plaintiff that she was not entitled to full coverage of medical expenses

because she delivered her child at Oishei.

72. Due solely to the conduct of and/or representations made by UHC, its employee(s), agent(s), and/or representative(s), upon which Plaintiff reasonably relied, Plaintiff has been damaged.

73. Plaintiff is entitled to relief from UHC in the form of payment of those medical expenses incurred during the delivery of her child at Oishei, which includes $22,323.72 in principal balance, plus interest thereon at New York's statutory rate of 9%.

### AS AND FOR PLAINTIFF'S THIRD CAUSE OF ACTION

74. Plaintiff reasserts and realleges each and every allegation contained within the paragraphs above as if fully set forth herein.

75. Plaintiff is a member of the Plan issued by UHC.

76. Pursuant to the Plan, Plaintiff is and was entitled to coverage for medical expenses associated with the delivery of her child.

77. In addition to providing coverage under its health insurance plans, UHC owes Plaintiff and each member of the plans it issues an implied covenant of good faith and fair dealing when handling claims for benefits owed thereunder.

78. UHC is and was obligated to abide by the implied covenant of good faith and fair dealing when assessing Plaintiff's claim for benefits under the Plan.

79. Similar to Healthy Babies, UHC administers nearly identical maternity support programs for various employers throughout New York State. (*See* Exhibit A).

80. Prior to delivery of her child, UHC, its employee(s), agent(s), and/or representative(s) represented to Plaintiff that Oishei is an in-network facility.

81. In other words, prior to delivery of her child, UHC, its employee(s),

agent(s), and/or representative(s) promised that Plaintiff would be provided full coverage of medical expenses if she delivered her child at Oishei.

82. Members of various plans issued by UHC throughout New York State reasonably and justifiably rely upon information provided by UHC, its employee(s), agent(s), and/or representative(s), through these maternity support programs.

83. After Plaintiff's delivery of her child, UHC, its employee(s), agent(s), and/or representative(s) notified Plaintiff for the first time that Oishei was an out-of-network hospital.

84. After Plaintiff's delivery of her child, UHC, its employee(s), agent(s), and/or representative(s) advised Plaintiff that she was not entitled to full coverage of medical expenses because she delivered her child at Oishei.

85. After Plaintiff's delivery of her child, UHC, its employee(s), agent(s), and/or representative(s) admitted that Plaintiff had been misinformed about the in-network status of Oishei prior to delivery.

86. After Plaintiff's delivery of her child, UHC, its employee(s), agent(s), and/or representative(s) agreed to reprocess Plaintiff's bill as a "benefit exception" and provide her coverage due to their error.

87. After agreeing to provide Plaintiff a "benefit exception," UHC rescinded its agreement, citing its internal Silence Policy—a policy supposedly indicating that nurses involved in Healthy Babies and/or other maternity support programs offered by UHC are supposed to remain silent with regard to the in-network status of hospitals.

88. Pursuant to the Silence Policy, UHC has decided that its employee(s), agent(s), and/or representative(s) are not permitted to provide pregnant members of the Plan and/or any UHC plan information regarding the network status of local hospitals.

89. Despite the Silence Policy, UHC members like Plaintiff are, in fact, provided with information regarding the network status of hospitals like Oishei by UHC's employee(s), agent(s), and/or representative(s).

90. UHC members like Plaintiff, who are provided incorrect information by UHC's employee(s), agent(s), and/or representative(s), are deprived of an opportunity to plan for and ultimately deliver their children at in-network hospitals, resulting in avoidable and expensive benefit denials.

91. In gross disregard of Plaintiff's interest, and the interests of members like Plaintiff, UHC blindly relies upon its Silence Policy despite the admitted, actual provision of misinformation by UHC, its employee(s), agent(s), and/or representative(s).

92. In revoking its agreement to provide a "benefit exception" due to its error, UHC deliberately and recklessly failed to consider Plaintiff's interests in relying upon information provided by UHC, employee(s), agent(s), and/or representative(s), in favor of UHC's own interests in declining to pay benefits under the Plan.

93. In revoking its agreement to provide a "benefit exception" due to its error, UHC deliberately and recklessly failed to consider Plaintiff's interests in proactively choosing a hospital that UHC will provide coverage for, in favor of UHC's own interests in declining to pay benefits under the Plan.

94. In revoking its agreement to provide a "benefit exception" due to its error, UHC deliberately and recklessly failed to consider Plaintiff's interests in relying upon the Plan for payment of life-altering medical services like the delivery of a child, in favor of UHC's own interests in declining to pay benefits under the Plan.

95. Upon information and belief, UHC engages in a pattern or practice of denying "benefit exceptions" following the provision of misinformation to its plan members by

UHC employee(s), agent(s), and/or representative(s), in blind reliance upon internal policies like the Silence Policy to avoid paying claims for benefits under the Plan and/or other UHC issued plans.

96. Upon information and belief, UHC's pattern or practice of denying "benefit exceptions" following the provision of misinformation to its plan members by UHC employee(s), agent(s), and/or representative(s), has and will continue to injure UHC's members planning for and incurring life-altering medical care such as the delivery of children at hospitals.

97. On account of UHC's breach of the covenant of good faith and fair dealing, Plaintiff is entitled to extracontractual and/or punitive damages from UHC at an amount in excess of $250,000.

### AS AND FOR PLAINTIFF'S FOURTH CAUSE OF ACTION

98. Plaintiff reasserts and realleges each and every allegation contained within the paragraphs above as if fully set forth herein.

99. New York State General Business Law § 349 prohibits any business or person from engaging in deceptive business practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.

100. By virtue of the conduct herein alleged, UHC has repeatedly and persistently engaged in deceptive business practices in violation of General Business Law § 349.

101. UHC's wrongful conduct in misrepresenting the terms of the Plan and/or other UHC issued plans and refusing to acknowledge such misrepresentations is and was "consumer-oriented," having a broad impact upon UHC's members at large.

102. UHC's members, including Plaintiff, reasonably rely upon information provided to them by UHC's employee(s), agent(s), and/or representative(s), regarding the Plan

and/or other UHC issued plans, regardless of the existence of UHC's Silence Policy and/or any other internal policies and procedures of UHC.

103. UHC's wrongful conduct in relying upon internal policies like the Silence Policy to deny benefits, despite the actual misrepresentation of the Plan and/or other UHC issued plans by UHC's employee(s), agent(s), and/or representative(s) is and was deceptive to Plaintiff and/or other UHC's members in a non-trivial way.

104. Plaintiff and other UHC members proactively choose medical facilities for care based upon the representations made by UHC, its employee(s), agent(s), and/or representative(s), such that misrepresenting the network status of a hospital prior to receiving medical care is materially deceptive to such members.

105. Plaintiff and/or other UHC plan members have and will continue to rely upon misrepresentations by UHC, its employee(s), agent(s), and/or representative(s), in selecting "in-network" medical facilities for the delivery of children and other medical procedures.

106. Plaintiff and/or other UHC plan members have and will continue to be injured as a result of reliance upon the deceptive misrepresentations of "in-network" facilities by UHC, its employee(s), agent(s), and/or representative(s), in selecting "in-network" medical facilities for the delivery of children and other medical procedures.

107. On account of UHC's deceptive business practices in violation of General Business Law § 349, Plaintiff is entitled to injunctive relief to prevent further injury to Plaintiff and/or other UHC plan members associated with UHC's deceptive practices.

108. On account of UHC's deceptive business practices in violation of General Business Law § 349, Plaintiff is entitled to recover her actual damages in an amount of not less than $22,323.72 in principal balance, plus interest thereon at New York's statutory rate of 9%.

109. On account of UHC's deceptive business practices in violation of General

Business Law § 349, Plaintiff is entitled to recover statutory damages associated with those practices, including reasonable attorneys' fees, costs, and expenses, in pursuit of this action, with interest thereon at New York's statutory rate of 9%.

**WHEREFORE**, Plaintiff, JACLYN COHEN, prays for judgment of this Court against the Defendant, UNITEDHEALTHCARE, finding as follows:

1. On the First and Second Causes of Action, a monetary judgment against Defendant, UNITEDHEALTHCARE in an amount of not less than $22,323.72 in principal balance, plus interest thereon at New York's statutory rate of 9%.

2. On the Third Cause of Action, a monetary judgment against Defendant, UNITEDHEALTHCARE, for bad faith extracontractual and/or punitive damages in an amount in excess of $250,000.

3. On the Fourth Cause of Action, an injunction against Defendant, UNITEDHEALTHCARE, to prohibit further deceptive business practices, as well as monetary damages against Defendant, UNITEDHEALTHCARE, for Plaintiff's actual damages in an amount of not less than $22,323.72 in principal balance and statutory damages, including reasonable attorneys' fees, costs, and expenses, in pursuit of this action, with interest thereon at New York's statutory rate of 9%.

4. Such other and further relief as to this court may find just, proper and equitable, together with the costs and disbursements of this action.

DATED:   Buffalo, New York
         January 18, 2022

HURWITZ & FINE, P.C.

By _____
    Dan D. Kohane, Esq.
    Ryan P. Maxwell, Esq.
*Attorneys for Plaintiff,*
JACLYN COHEN,
1300 Liberty Building
424 Main Street
Buffalo, New York 14202
(716) 849-8900
ddk@hurwitzfine.com
rpm@hurwitzfine.com